OPINION OF THE COURT
Bruce M. Kaplan, J.
The dynamic and evolutionary nature of procedural law in the Family Court is most strikingly illustrated in the context of speedy trial requirements in juvenile delinquency proceedings.
It serves as microcosm of the process where the Legislature promulgates procedures in broad stroke, and the courts fill the interstices through statutory construction either by strict reading of a statute, or by attempting to divine the Legislature’s intent. In turn the Legislature amends existing law to rectify problems surfaced by common-law exposition, or to signify its disaffection with the purport of decisional law.
This decision examines the process leading to the enactment of chapter 501 of the Laws of 1994. It also details the manner in which the presentment agency fulfilled the mandate of due diligence to locate, or to bring to court a respondent whose absence precluded the commencement of a fact-finding hearing and the ramifications of its actions.
The right of a juvenile to a speedy fact-finding hearing is set forth in Family Court Act §§ 310.2, 320.2 and 340.1. Family Court Act § 340.1 requires that the fact-finding hearing for a juvenile, who is not detained, be held within 60 days of his or her initial appearance. The fact finding may be adjourned for an additional 30 days upon motion of the presentment agency, respondent, or the court but only for good cause shown. Successive adjournments are permitted only upon a showing of special circumstances.
While Family Court Act § 340.1 is silent as to what sanctions would flow from a failure to comply with the time limits, decisional law has occupied this gap arguably with questionable results.
In the seminal case of Matter of Frank C. (70 NY2d 408), the Court of Appeals observed that Family Court Act § 340.1 is a true speedy trial provision which requires accused juveniles to be brought to trial within a 60- to 90-day period barring a showing of special circumstances. In that matter a dismissal on speedy trial grounds was granted, there being a period of some 217 days between the respondent’s initial *599 appearance on June 11, 1985 and the trial inception on January 15,1986.
The Court observed that there had been no attempt to adduce good cause or special circumstances for the delay in the commencement of the fact finding. In that case there was no indication that the respondent was not available for trial at any given time even though some delays in the commencement of the proceeding were attributable to him.
A far different fact pattern spawned Matter of Randy K. (77 NY2d 398). In that case the Court of Appeals was confronted with a situation where a warrant was issued when a respondent had failed to appear in court on July 8, 1988, following his initial appearance on May 26, 1988. The Court rejected the presentment agency’s argument that the respondent’s nonappearance, and resultant issuance of a bench warrant would have been grounds for good cause and special circumstances adjournments, noting that "the fact-finding hearing was delayed for 150 days without a motion for an adjournment, without an order of adjournment and, accordingly, without any statement on the record for the 'reasons for the adjournment’ ” (77 NY2d, at 402-403). This course of action was irreconcilable with the mandate of the Family Court to further rehabilitation by assuring expeditious and certain determinations of juvenile delinquency proceedings and the concomitant obligation of the Family Court to supervise and monitor them in order to achieve these aims.
The dissent of Chief Judge Kaye (then Judge Kaye) in this four to three decision contended that the failure of the presentment agency to calendar and adjourn the case at successive 30-day intervals during the period of respondent’s absence did not require dismissal by virtue of Family Court Act § 340.1. She noted that Family Court Act § 340.1 "is addressed to delays within the system, and not at all to delays occasioned solely by the respondent’s own flight” (77 NY2d, at 407).
A closely parallel line of cases construed Family Court Act § 320.2 to require dismissal of a petition for failure to hold an initial appearance within 10 days after its filing where the respondent was not in detention, had notice of the filing date and defaulted, and good cause for the delay had not been shown.
The common practice under these conditions, sine die, was to issue a warrant, when a respondent with notice of a given *600 date on which a petition was filed failed to appear. As a result, not only would compliance with the 10-day requirement be foreclosed, but the opportunity to adduce grounds for a good cause would be unavailable even though the lost opportunity emanated from the practice of the presentment agency. (See, Matter of Robert S., 192 AD2d 612 [2d Dept 1993], affg 152 Misc 2d 975 [Fam Ct, Kings County 1991, Dabiri, J.].) Robert S. was subsequently held to be applied retroactively (Matter of R.G., 157 Misc 2d 922 [Fam Ct, NY County 1993]; Matter of Lameen A., 158 Misc 2d 324 [Fam Ct, Kings County 1993]).
These draconian strictures, notwithstanding that they arose in a matrix of fact-finding hearings, were soon made applicable to dispositional hearings. (Matter of James W., 196 AD2d 504 [2d Dept 1993]; Matter of Leon H., 196 AD2d 539 [2d Dept 1993], revd 83 NY2d 834; Matter of Jose R., 194 AD2d 310 [1st Dept 1993], revd 83 NY2d 388.) The mechanistic approach to speedy trial was not all encompassing.
In Matter of Aaron J. (80 NY2d 402), in affirming the Family Court and the Appellate Division, the Court of Appeals noted that a referral for adjustment services, made pursuant to Family Court Act § 308.1, tolled, for a period of up to 120 days, the time frame for starting a fact-finding hearing required by Family Court Act § 340.1 when the referral was ordered pursuant to Family Court Act § 320.6.
The Court of Appeals noted that Family Court Act § 308.1 could not be ignored, and Family Court Act § 340.1 had to be read harmoniously and compatibly with it.
In Matter of Jose R. (83 NY2d 388), the Court of Appeals imparted some common sense and perspective to stem the headlong rush to speedy trial, at the risk of dismissal, no matter what disservice such a course of action dealt to the realization of the purposes and objectives of article 3 of the Family Court Act.
Judge Bellacosa’s analysis distinguished the dispositional strictures of Family Court Act § 350.1 from the adjudicatory provisions of Family Court Act § 340.1, noting that Family Court Act § 310.2 enacted a specific right to speedy adjudication but limited it to fact-finding adjudication, while silent as to disposition. He noted that Family Court Act § 332.1, which provides expressly for dismissal of petitions, does not include failure to conduct a speedy dispositional hearing as a ground.
He went on to quote Matter of Alonzo M. v New York City *601 Dept. of Probation (72 NY2d 662), which in turn quoted the appropriate principle of statutory instruction contained in McKinney’s Consolidated Laws of NY, Book 1, Statutes § 240, ”[w]here a statute describes the particular situations in which it is to apply and no qualifying exception is added, 'an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded’ (Matter of Alonzo M. v New York City Dept. of Probation, 72 NY2d 662, 665, quoting Patrolmen’s Benevolent Assn. v City of New York, 41 NY2d 205, 208-209; McKinney’s Cons Laws of NY, Book 1, Statutes § 240).” (83 NY2d, supra, at 394.)
He noted that the Court’s rejection of wholesale reflexive dismissals for speedy dispositional lapses irrespective of the reason therefor, is supported by elementary and logical rules of statutory construction.
It is obvious that the provisions governing fact finding and disposition have different purposes and concentrate on analytically distinct stages in juvenile delinquency proceedings.
Jose R. (supra) teaches that since the objective of the dispositional hearing is the ascertainment of an appropriate determination of whether supervision, treatment or confinement is consistent with the needs and best interests of the respondent, and the need for protection of the community, it would be hard to square this objective with the dismissal of the petition at the dispositional phase solely because the juvenile had failed to show up for the dispositional hearing.
It concluded by noting that when the delay in disposition is occasioned by the respondent’s failure to show up, automatically dismissing the proceeding is not supported by precedents or actual applicable statutory construction.
The exhortation to the Legislature to study and rectify procedural mishaps that made necessary such rulings as Frank C. and Randy K. (supra), which echoed prior urgings of the Family Court Advisory Committee, and such decisions as Matter of W. H. (159 Misc 2d 1032 [Fam Ct, NY County 1994]), ultimately did not go unheeded.
The Legislature by chapter 501 of the Laws of 1994, effective July 26, 1994, eliminated the necessity for successive 30-day calendaring for review of special circumstances warrants issued when a respondent failed to appear at a fact-finding hearing or initial appearance for which he had notice.
As a result the Family Court was no longer obliged to calendar all of the petitions which had a warrant still out *602 standing at successive 30-day intervals at peril of dismissal of the petition.
In order to effectuate the mandate of Randy K. (supra) it was obliged to do this in order to effectuate swift and certain determinations of juvenile delinquency matters by monitoring its docket to assure that these matters did not languish on its docket.
This requirement done at tremendous cost in police, prosecutorial, and judicial resources yielded minuscule benefits. While efforts were made, all too rarely was a respondent returned to court except in connection with an arrest on an unrelated matter.
Chapter 501 of the Laws of 1994 emplaced a scheme somewhat analogous to the Criminal Procedure Law.
It amends Family Court Act § 312.2 to require that upon the issuance of a warrant the court set a date within 30 days of its issuance for a report on the effort made to secure the respondent’s appearance in court. It may order the person legally responsible to appear in court and it may order subsequent reports. Upon receiving the initial or subsequent report, the court shall set forth in writing its finding of fact as to the efforts made to date to secure the respondent’s presence in court.
It further amends Family Court Act §§ 320.2 and 340.1 to provide tolling provisions which exclude from the computation of time within which an initial appearance or fact-finding hearing must take place, the period of time extending from the date that the warrant is issued until the respondent returns to court.
In order to avail itself of this period of exclusion it must be demonstrated that the respondent’s location could not be determined with the exercise of due diligence or if the respondent’s location were known the respondent’s presence in court could not be obtained with the exercise of due diligence.
In conclusion chapter 501 of the Laws of 1994 provides that in determining whether due diligence has been exercised the court shall consider the report made pursuant to Family Court Act § 312.2.
This law, as noted by the Office of Court Administration memorandum in support (Oct. 1994 [No. 7] McKinney’s Session Laws of NY, at A-1066), requires consonant with the requirement of People v Bolden (81 NY2d 146), that in order to exclude the period of time in which a warrant is outstand *603 ing due diligence must be made to bring a respondent to court. This requirement extends to situations where the respondent’s location is both unknown, and known. (Matter of Lydell J., 154 Misc 2d 94 [Fam Ct, Kings County 1992].)
Let us now consider the efforts made by the presentment agency to secure the respondents’ presence in the three cases which are the subject of this decision.
In Matter of E.F., the petition was filed on June 4, 1993 and a warrant issued due to his nonappearance. The matter was next calendared on June 14, 1993, good cause found for not completing the initial appearance within 10 days, and adjourned until July 14, 1993.
After July 14, 1993, the case was calendared some 14 additional times. And each time reports of the continuing efforts to apprehend the respondent, and secure his presence in court were delineated, and findings of special circumstances were made. After November 22nd those efforts in the main consisted of confirming that efforts were still being made to apprehend the respondent.
Of far more significance were the diligent efforts made between June 4, 1993 and November 22, 1993. These efforts included the transmittal of letters to the respondent’s residence informing his family of the warrant and instructions to return him to Family Court, written and oral communications to respondent’s aunt, his school, the transmittal of the warrant to New York Police Department central warrants and from there its transmittal to the residential precinct.
In addition, the Assistant Corporation Counsel (ACC) had numerous conversations with a police officer at the respondent’s residential precinct. They established that he had made several home visits, a school visit and had spoken to relatives of the respondent. Finally, the Assistant Corporation Counsel spoke to the respondent’s uncle who indicated he would bring the respondent to Family Court on November 22, 1993. Unfortunately, he was unable to do so.
It is these efforts over a substantial period of time that the court memorialized in written findings of fact that constituted the efforts made to secure the respondent’s appearance in court.
In Matter of D.R. a warrant was issued when respondent failed to appear in the assignment part when the case was called, although he had been in the courthouse earlier in the day. The matter was next calendared for December 21, 1993, *604 and a finding of good cause made for failure to complete the initial appearance within 10 days.
The warrant was continued and the matter adjourned until January 19, 1994. Thereafter it appeared on the calendar seven additional times with special circumstances found and the warrant continued until August 18, 1994, when findings of fact pursuant to Family Court Act § 312.2 (2) were submitted for approval.
The efforts made to return the respondent to Family Court included the transmittal of a letter to his family requesting that the respondent return to Family Court. There was a conversation with respondent’s father who said that he would urge the respondent to return to Family Court, although he was not living at home.
There were further discussions with the arresting officer who was requested to look for the respondent and a copy of the warrant was sent to him.
Since the respondent does not attend school, recourse to the Board of Education was not a viable alternative.
However, a copy of the warrant was sent to central warrants to be entered into the police department’s warrant system and forwarded to the residential precinct. This initiative was followed up by conversations between the ACC and an officer of the 52nd Precinct who made several home visits and spoke to respondent’s father.
Finally, at the officer’s request, the ACC sent a photograph of the respondent to him and he indicated his willingness to continue looking for the respondent.
These efforts were noted by the court in its written findings of fact dated August 18, 1994.
In Matter of S.L. a warrant was issued when she failed to appear for initial appearance on July 6, 1994.
On July 18th good cause was found for not completing the initial appearance within 10 days, and the warrant was continued until August 18th. On August 18th, the warrant was continued and the court signed findings of fact detailing the efforts made to bring the respondent to Family Court.
Even though the matter had been in the court for less than two months, letters had been sent to the respondent’s residence requesting her and her family to come to Family Court, and a copy of the warrant was sent to the respondent’s residential precinct.
*605 In addition, a letter was sent to the respondent’s school, along with a copy of the warrant and instructions to return the respondent to Family Court.
In addition, the warrant was sent to central warrants and officially forwarded to the respondent’s residential precinct. Finally, the ACC conferred with a police officer in the 23rd Precinct who indicated he had visited the respondent’s home address, spoken to the respondent’s sister and ascertained that the respondent was living in Harrisburg, Pennsylvania. The officer obtained the respondent’s address and indicated that he would follow up on the matter.
The court on August 18th signed findings of fact memorializing the efforts made to return the respondent to court. Since the S.L. matter involved far fewer appearances on the calendar due to chapter 501 of the Laws of 1994 becoming effective between the second and third appearance the court will instruct that a further report pursuant to Family Court Act § 312.2 (2) be submitted on August 17, 1995. Since the statute leaves to the court’s discretion the ordering of further reports and the efforts made with respect to S.L. were over but a brief period of time, it will be useful to see whether new leads were uncovered or what efforts continue to be made.
It would also serve a salutary purpose of countering arguments that diligent efforts could not be found where they were only made over a six-week period.
The legislative compromises necessitated to assure enactment of chapter 501 of the Laws of 1994 resulted in the omission of a "bright-line” definition of due diligence.
It is not so much ironic as inevitable that this omission has started the evolutionary process anew with Family Court Judges tasked to determine whether after issuance of a warrant due diligence has been exercised to secure a respondent’s appearance in court. While Family Court Act § 320.2 (1) and § 340.1 (7) require the court to consider the report made within 30 days of the issuance of the warrant pursuant to Family Court Act § 312.2 (2) in determining whether due diligence has been exercised they also provide that other unspecified factors be considered.
Such language constitutes an open-ended invitation for case-by-case interpretations.
It is respectfully urged that the Legislature further amend the Family Court Act to provide such a bright line.